Mark A. **TESSIER** et al.

v.

Donald S. **MOFFATT** et al.

**Civil Action No. 98–0116.**

United States District Court,
E.D. Louisiana.

Nov. 30, 1998.

---

John Robert Martzell, Scott R. Bickford, Richard A. Filce, Martzell & Bickford, New Orleans, LA, Philip Richard Bulliard, Philip R. Bulliard, Metairie, James M. Garner, Martha Y. Curtis, William J. Furnish, Jr., Sher Garner Cahill Richter, Klein McAlister & Hilbert, LLC, New Orleans, LA, for Mark A. Tessier, Alan E. Arnold, Clarenve B. Brewster, Edward J. Cambre, Thomas E. Camre, Gayden Derickson, Harry P. Gamble. IV, Ben A. Guider, Jr., M.D., Ranjit S. Kadan, M.D., Hillary P. Lincoln, Robert E. Songy, M.D., William W. Watson, Jr., Magnolia Imaging Consultants, HMC Patnership, Gerald D. Gillen, Nancy Maughs Derickson.

Robert T. Garrity, Jr., Robert T. Garrity, APLC, Harahan, LA, Robert A. Kutcher, John Bologna Krentel, Nicole S. Tygier, Chopin, Wager, Cole, Richard, Reboul & Kutcher, LLP, Metairie, LA, for Donald S. Moffatt, select Properties, Ltd., Leon L. Giorgio, Jr., Noralco Overseas, Inc., Medical Mortgage Partnership.

Andrew Russell Lee, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La, Leon Gary Jr.,Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Baton Rouge, LA, for Thomas Hayden Clark, George A. Foster, Jr., Guaranty Income Life Ins. Co., Dorothy Lee Clark.

George L. Gibbs, Leefe, Gibbs & Koehler, Metairie, LA, Arthur Devereau Dupre, Jr., Daigle, Sullivan, Dupre & Aldous, Metairie, LA, for James M. Gibbs, III.

Peter G. Carmichael, John Emory Seago, David A. Waguespack, Waguespack, Seago & Carmicheal, Baton Rouge, LA, Paul H. Spaht, Connell Lee Archey, Linda Orlansky Posner, Kantrow, Spaht, Weaver & Blitzer, Baton Rouge, La, Vicki A. Turko, Chopin, Wagner, Cole, Richard, Rebou & Kutcher, LLP, Metairie, LA, for Peter Carmichael.

John Bologna Krentel, Carl Nelson Finley, Metairie, LA, for Select Properties Ltd. Realty.

Jean Marie Sweeney, Milling, Benson, Woodward, LLP, New Orleans, LA, Murphy S. Christina, New Orleans, LA, for Milling Benson Woodward L.L.P.

## ORDER AND REASONS

LEMMON, District Judge.

IT IS HEREBY ORDERED that the defendants' Fed.R.Civ.P. 12(b)(6) motion to dismiss (documents # 12 and # 54) is GRANTED IN PART and DENIED IN PART. IT IS ORDERED that plaintiffs' motion to review the magistrate judge's order denying the plaintiffs' motion to compel responses to requests for admissions and prohibiting the plaintiffs from submitting additional requests without leave (document # 65) is GRANTED, and the magistrate judge's order is AFFIRMED. IT IS ORDERED that the defendants' "Motion to Dismiss Petition for Appointment of Liquidator and for Dissolution" (document # 55) is DENIED.

The plaintiffs are fourteen of the original thirty-four limited partners and owners of a minority interest in HMC Partnership, a Louisiana Limited Partnership (HMC). The defendants are the managing general partner, the remaining general partners, certain of the limited partners and the managing general partner's counsel. The plaintiffs filed suit in the 24th Judicial

District Court for the Parish of Jefferson, claiming breach of fiduciary duty, conversion of partnership assets, fraudulent misrepresentation, and unfair trade practices pursuant to the Louisiana Unfair Trade Practices and Consumer Protection Law.[1] La.Rev.Stat. 51:1401 *et seq.* (LUTPA). The defendants moved for removal after the plaintiffs filed their third supplemental and amending petition asserting a claim pursuant to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* (RICO). Defendants filed motions, pursuant to Federal Rules of Civil Procedure 12(b)(6), to dismiss the fraudulent misrepresentation claim, the unfair trade practices claim, and the plaintiffs' fourth supplemental and amending petition; a motion to review the magistrate judge's order denying the plaintiffs' motion to compel; and a "Motion to Dismiss Petition for Appointment of Liquidator and for Dissolution."

The following facts are alleged in the complaint and in the cross claim. In September 1983, Select Properties, Ltd. (Select), as managing general partner; Donald S. Moffatt, Leon L. Giorgio, and James Gibbs, as general partners; and Gibbs and Moffatt as special limited partners, formed HMC. Select, Moffatt, and Giorgio obtained a 20% interest in HMC. After the formation of HMC, thirty-five limited partnership units were offered for sale through a private placement memorandum at a price of $45,000 per unit, a total of $1,575,000. The holders of the thirty-five investment units were admitted to HMC in January 1984.

The private placement memorandum stated that HMC was formed to acquire, own, and operate an office building on Houma Boulevard in Metairie, Louisiana. HMC executed two promissory notes (Note A and Note B) to St. Bernard Federal Savings & Loan Association. Note A, in the principal amount of was $3,910,000, was a wrap-around mortgage note and required St. Bernard Federal to service an underlying obligation to Provident Life and Accident Insurance Company of $2,043,519.54. Note B, in the amount of $450,000, was to be used for the construction of a roof-top addition to the office building, which never materialized.

In late 1990 or early 1991, Moffatt, Select Properties, Giorgio, and Noralco formed Medical Mortgage Partnership, a Louisiana Limited Partnership (MMP). Through an agreement with the Resolution Trust Corporation, which was handling the receivership of St. Bernard Federal, MMP acquired the $3,910,000 Note A at a discount from its face amount,[2] with funds received from Guaranty.[3] The acquisition of Note A and the advantage of the discount were not disclosed to the other HMC partners. On May 30, 1996, HMC sold the office building and fulfilled its obligation on Note A by paying the full face value of Note A to MMP.

## DISCUSSION

### I.  The Motion to Dismiss

Rule 12(b)(6) authorizes a court to "dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The complaint is liberally construed in favor of the plaintiff, and all facts pleaded in the complaint are taken as true. *See Campbell v. Wells Fargo Bank,* 781 F.2d 440, 442 (5th Cir.1986). A motion to dismiss may be granted when "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*

1. The action consists of three consolidated state court actions: the "Partner" suit, No. 98–1116; the "Liquidation" suit, No. 98–0120; and No. 98–0119, which has never been served upon the defendants.

2. Gibbs alleged in the cross claim that the discount is believed to have been not less than $1,700,000.

3. Limited Partners Clark and Foster are the president and the chairman of the board of Guaranty.

*v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### A. Fraudulent Misrepresentation

The plaintiffs allege in their complaint that the defendants made fraudulent misrepresentations that they would construct a rooftop addition to the office building and that the general partners or their affiliates would lease the rooftop office space. Defendants contend that the claims should be dismissed as time barred because the alleged fraudulent misrepresentation is revealed in the private placement memorandum that was given to plaintiffs in 1984, and the plaintiffs failed to file suit until 1996.

In the private placement memorandum in 1984, the defendants represented to the plaintiffs that the roof-top addition would be built and leased to the general partners. On March 12, 1985, the annual report informed the plaintiffs that the defendants were not going to build the roof-top addition as planned and that the project was "indefinitely postponed." Subsequent reports in 1986, 1987, 1988, and 1989 reiterated the defendants' intention not to build the roof-top addition as set forth in the private placement memorandum. The roof-top addition was no longer mentioned in the annual reports after 1989.

■ "Federal securities laws do not specify a limitations period for bring suit under § 10(b) or Rule 10b–5 of the Securities Exchange Act." *Jensen v. Snellings,* 841 F.2d 600, 606 (5th Cir.1988). "Where federal law does not specify a limitations period, federal courts generally borrow the limitations period from the state statute which substantively most resembles the federal action." *Id.* In Louisiana, securities are governed by the Louisiana Blue Sky Law, La. R.S. 51:701 *et seq.,* that provides for a prescriptive period of two years after the plaintiff knew or should have known of the fraud. *See Landry v. All Am. Assurance Co.,* 688 F.2d 381 (5th Cir.1982). Prescription begins to run the moment the aggrieved party either has knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge of the violation. *Davis v. A.G. Edwards and Sons. Inc.,* 823 F.2d 105, 107 (5th Cir.1987) (internal quotations and citations omitted). All that is required is knowledge of the "facts forming the basis of this cause of action." The plaintiff need not have knowledge of the cause of action itself. *Azalea Meats, Inc. v.. Muscat,* 386 F.2d 5, 9 (5th Cir.1967).

■ The plaintiffs admit that they received the annual reports and that they were aware that the roof-top addition had not been built. The plaintiffs may have had actual knowledge that the defendants were not going to build the addition as early as March 12, 1985. When the addition was no longer mentioned in the annual reports subsequent to 1989 and construction had not begun, the plaintiffs should have been aware that the project had been abandoned. Accordingly, the actions under both federal and state securities law are time barred.

Claims that are brought under Louisiana tort law have a prescriptive period of one year. *See* La. Civ.Code art. 3492. Prescription begins to run from the day the injury or damage is sustained. *Id.* Therefore, any claims for fraudulent misrepresentation under state tort law which arose more than one year prior to filing suit are time barred.

There are no allegations that any fraudulent misrepresentation were made within one year of filing the petition. Thus, whether the claim for fraudulent misrepresentation is brought under federal securities law, state securities law, or state tort law, the twelve-year delay in filing suit leads to the same conclusion that the action is time barred as to all of the plaintiffs.

### B. Unfair Trade Practices

#### 1. Standing of the Plaintiff-partners

The defendants contend that the plaintiffs lack standing to bring a claim pursu-

ant to LUTPA because the Act limits relief to business competitors or consumers. The defendants assert that the plaintiffs are business partners with the defendants rather than competitors or consumers. The plaintiffs argue they are consumers because they purchased partnership units from the defendants and that they are competitors because MMP was in direct competition with HMC.

■■■■ The purpose of LUTPA is to deter injury to competition. *See Schenck v. Living Centers–East, Inc.,* 917 F.Supp. 432, 439 (E.D.La.1996). The statute protects consumers from the loss of money or movable property as the result of an unfair or deceptive method, act, or practice of another. *Id.* To have standing under LUTPA the plaintiffs must demonstrate that they are consumers or business competitors. *Delta Truck & Tractor, Inc. v. J.I. Case Co.,* 975 F.2d 1192 (5th Cir.1992). The purchase of partnership units does not qualify as a consumer transaction under the meaning of the statute, because LUTPA does not apply to security transactions. *Smith v. Cooper/T. Smith Corp.,* 846 F.2d 325, 328 (5th Cir.1988); *Moore v. A.G. Edwards & Sons, Inc.,* 631 F.Supp. 138, 144 (E.D.La.1986).[4] Accordingly, the plaintiff-partners are not consumers by virtue of their purchase of the partnership units.

■■■ The plaintiff-partners have not alleged facts to support an allegation that they, as individuals, are business competitors within the meaning of LUTPA. In order to qualify as business competitors, the individual partners must actually or potentially engage in business that com-

petes directly or indirectly with MMP. *See Delta Truck & Tractor, Inc. v. J.I. Case Co.,* 975 F.2d 1192, 1205 (5th Cir.1992); *Morris v. Rental Tools, Inc.,* 435 So.2d 528, 533 (La.Ct.App.1983). LUTPA is patterned after the Federal Trade Commission Act, and the language closely tracks 15 U.S.C. § 45(a) of the federal statute. *Id.* In addressing the meaning of business competitor in the federal statute, the United States Supreme Court has stated:

> It is obvious that the word "competition" imports the existence of present or *potential* competitors, and the unfair methods must be such as injuriously affect or tend thus to affect the business of these competitors—that is to say, the trader whose methods are assailed as unfair must have present or *potential* rivals in trade whose business will be, or is likely to be lessened or otherwise injured.

*Federal Trade Commission v. Raladam Company,* 283 U.S. 643, 649, 51 S.Ct. 587, 75 L.Ed. 1324 (1931).

Unlike the individual partners, HMC does meet the definition of competitor because it, like MMP, engages in the business activity of developing and renting medical office space. However, the plaintiff-partners may not bring an action in a representative capacity on behalf of the HMC partnership under LUTPA. *See Thibaut v. Thibaut,* 607 So.2d 587, 607 (La.Ct.App.1992); *see also* La. R.S. 51:1409(A) (prohibits actions brought in a representative capacity). Thus, the plaintiff partners do not have standing to bring suit as limited partners or as representatives of the partnership.

---

4. The *Moore* Court explained that applying LUTPA to security transactions would produce effects unintended by the Louisiana legislature. 631 F.Supp. at 145. The Court reasoned that the application of LUTPA to the already heavily regulated security transactions would create unintended overlapping of investigative and enforcement powers. *Id.* Most importantly, the court stated that if the legislature had intended "to expose securities violators to the punitive spectre of treble dam-

ages," the Blue Sky statute which regulates securities could have easily so provided. *Id.* Subsequent courts have consistently recognized the holding in *Moore,* and plaintiffs have articulated no reasons why this Court should abandon it today. *See Smith v. Cooper/T. Smith Corp.,* 846 F.2d 325, 328 (5th Cir.1988); *Stephenson v. Paine Webber Jackson & Curtis Inc.,* 839 F.2d 1095, 1101 (5th Cir.1988).

### 2. Standing of HMC; Motion to Dismiss Petition for Appointment of Liquidator and for Dissolution; Motion to Dismiss Fourth Supplemental and Amending Petition (Adding HMC as a Party)

#### a. The Liquidator

█ Before the case was removed to federal court, the state court judge appointed Harry Hardin, III as the permanent judicial liquidator for HMC in the "Liquidation" suit. The defendants filed a motion for a new trial. However, the case was removed before a hearing on the motion. The Court construes the defendants' present motion to dismiss as reurging the state court motion for a new trial.

"Interlocutory state court orders are kept in force upon removal of a case to federal court by 28 U.S.C. § 1450." *Nissho–Iwai American Corp. v. Kline*, 845 F.2d 1300, 1303 (5th Cir.1988). "The federal court accepts the case in its current posture as though everything done in state court had in fact been done in the federal court." *Id.* (internal quotation and citation omitted). A state court ruling which is purely interlocutory remains subject to reconsideration just as it had been prior to removal. *Id.*

The defendants argue that the appointment of a liquidator was contrary to the law because the state court appointed Hardin without conducting an evidentiary hearing in contravention of La.Rev.Stat. 12:143. They contend that the issue of the appointment of a liquidator was submitted on the basis of memoranda and argument to the court and that the appointment was made summarily without any evidence being produced.

Section 12:143(E) provides that "[t]he court may, after trial, appoint a judicial liquidator, and may, *ex parte* pending trial, appoint a temporary liquidator whose authority shall cease upon appointment of a judicial liquidator, upon dismissal of the petition, or upon appointment of a receiver."

The defendants have not demonstrated that the state court judge's appointment of a liquidator to protect the interest of HMC and its members was improper. The state court judge held a hearing to determine whether a liquidator should be appointed. Although the state court judge informed counsel that they were permitted to present witness testimony, the parties did not call witnesses. The question whether a liquidator should be appointed was submitted on the pre-trial memoranda, post-trial briefs, and the arguments at the hearing. The appointment of the liquidator was proper, and the motion for a new trial is denied.

#### b. Standing of HMC

█ The analysis now turns to the question whether HMC, represented by Hardin, has standing to bring a claim under LUTPA. "In Louisiana, a partnership is a legal entity distinct from the partners who compose it." *Whalen v. Carter*, 954 F.2d 1087, 1093 (5th Cir.1992); La.Code Civ. Pro. art 688. "[A] Louisiana jurisprudential rule holds that as long as a partnership exists and has not been dissolved or liquidated, the partnership itself is the proper party to maintain an action for damages." [5] The HMC partnership has standing to bring its claims under LUTPA if it can demonstrate it is a consumer or business competitor of the defendants. *See Thibaut*, 607 So.2d at 607–08.

█ The plaintiffs allege that the defendants engaged in unfair or deceptive methods, acts, or practices and that the MMP partnership stood in direct competition with HMC partnership. The plaintiffs specifically allege that, in 1994, 1995, and 1996, the defendants used HMC assets in various respects for the benefit of others, purchased the partnership note at a substantial discount, provided rent-free office

---

**5.** Louisiana law permits a plaintiff-partner to bring a private action against the defendant-partner when fraud is alleged. *See Dupuis v. The Becnel Co.*, 535 So.2d 375 (La.1988).

space and salaries, and engaged in direct competition with HMC in renting and leasing commercial and medical office space. Moreover, the plaintiffs allege that, upon the sale of the partnership's office building, the defendants transferred essentially all of the remaining assets to MMP.

The factual allegations in the complaint are sufficient to allege that HMC is a business competitor of the defendants. Thus, HMC has standing to bring its claims under LUPTA.

## 3. Peremption and Prescription; Motion to Dismiss Fourth Supplemental and Amending Petition (HMC's Claims)

### a. Relation back

■ The defendants argue that HMC's unfair trade practices claims are time barred because HMC has not alleged conduct which occurred within one year of filing the fourth amended complaint on April 20, 1998, when HMC became a party plaintiff. The defendants argue that, even if "HMC *could* ride the prescriptive coattails of the other Plaintiffs," the complaint fails to identify a specific time period from which the calculation of the prescriptive period could be made.

"Federal Rule of Civil Procedure 15(c) is a procedural provision to allow a party to amend an operative pleading despite an applicable statute of limitations in situations where the parties to litigation have been sufficiently put on notice of facts and claims which may give rise to future related claims." *Kansa Reinsurance v. Congressional Mortgage Corp.*, 20 F.3d 1362, 1366–67 (5th Cir.1994). The "relation back" doctrine recognizes that the purpose of the statute of limitations is accomplished by the filing of the initial pleading. *Id.* An amended complaint adding a plaintiff relates back if the plaintiff is a real party in interest. *See* 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, 6A Federal Practice and Procedure: Civil 2d § 1501. Rule 15(c) provides:

An amendment of a pleading relates back to the date of the original pleading when

(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed.R.Civ.P. 15(c).

This rule does not refer specifically to plaintiffs. The Advisory Committee notes explain that "[t]he relation back of amendments changing plaintiffs is not expressly treated in revised Rule 15(c) since the problem is generally easier." *Id.*, Advisory Committee Notes, 1966 Amendment. However, "the chief consideration of policy is that of the statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs." *Id.* A cause of action under LUTPA can be maintained under a "relation back theory." *See Thibaut*, 607 So.2d at 608–09.

HMC's claim is based on the same transactions as the claim in the original complaint against the defendants. Moreover, the defendants were informed that HMC has an interest in the outcome of the litigation, and the amendment of the complaint to include the partnership does not

result in prejudice to the defendants' interests. Accordingly, the plaintiffs are allowed to amend their complaint to add HMC, and HMC's claims relate back to the filing of the original complaint.

### b. Timeliness of HMC's LUTPA claims

The original petition was filed in state court on September 20, 1996, and alleged conduct in violation of LUTPA by the defendants through 1996. LUTPA provides that an action brought under its sections "shall be prescribed by one year running from the time of the transaction or act which gave rise to this right of action." La.Rev.Stat. 51:1409(E). Although the Supreme Court of Louisiana has not spoken on the issue, courts of appeal have consistently held that LUTPA is a peremptive rather than prescriptive statute.[6] *Thibaut,* 607 So.2d at 609; *Canal Marine Supply, Inc. v. Outboard Marine Corp.,* 522 So.2d 1201, 1203 (La.App. 4th Cir.1988).

The Supreme Court of Louisiana explained the difference between peremption and prescription stating:

[P]rescription bars the remedy sought to be enforced and terminates the right of access to the Courts for enforcement of the existing right. A peremptive statute, however, totally destroys the previously existing right with the result that, upon expiration of the prescribed period, a cause of action no longer exists to be enforced.

*Pounds v. Schori,* 377 So.2d 1195, 1198 (La.1979). In 1982, the legislature defined peremption in La. Civ.Code art. 3458:

Peremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period.

LUTPA is penal in nature and must be strictly construed. *See Canal Marine Supply,* 522 So.2d at 1203. Because peremptive statutes do not allow for interruption or suspension, any claim under LUTPA arising more than one year prior to filing suit is perempted.

The plaintiff argues that the defendants engaged in continuing torts that enlarge the period for filing the LUTPA claims.[7] However, neither the amended complaint nor the briefs identify the continuing nature of the allegations. HMC alleges separate, not continuing, unfair or deceptive actions by the defendants since the formation of MMP in late 1990 or early 1991 that placed MMP in direct competition with HMC. In the surreply in opposition to the motion to dismiss, the plaintiffs have identified four LUTPA claims that pertain to HMC: the sharing of profits from the sale of HMC's building with Guaranty in 1996, the payment to MMP of the full face value of discounted Note A upon the sale of the building in 1996, the payment of sales commissions to Select in connection with the 1996 sale of the building, MMP's intention to enforce Note B if HMC had

---

6. Section 15:1409 contains the word "prescribed," not "perempted." LUTPA was enacted in 1972, ten years before the article which defined peremption.

7. In *Fox v. Dupree,* 633 So.2d 612 (La.Ct.App. 1993), the First Circuit held that the peremptive one-year term for bringing an action under LUTPA for a loan broker's alleged failure to comply with bond filing and disclosure requirements of the loan broker's statute could not begin to run until the loan broker complied with the law because every day the loan broker was in violation gave rise to a new right of action for unfair trade practice. *Id.* at 614. The court acknowledged that the

peremption provided by § 1409(E) is not subject to interruption or suspension, but nevertheless held that the continuing nature of the violation of the statute prevented the peremptive period from running. *Id.* In *Benton, Benton and Benton v. Louisiana Public Facilities Authority,* 672 So.2d 720, 723 (La.Ct.App. 1996), the First Circuit held that the peremptive period of LUTPA cannot begin to run as long as violations of the statute continue. Both instances were after the decision in *Cason v. Texaco, Inc.,* 621 F.Supp. 1518, 1523 (M.D.La.1985), which held that § 1409(E) cannot be enlarged by application of the doctrine of continuing violation.

sufficient assets to pay off the note upon the sale of the building. Thus, HMC's LUTPA claims concerning the sale of the building and the alleged unfair and deceptive transfer and distribution of assets of HMC, which arose within one year of filing suit, are not time barred. HMC's LUTPA claims which arose more than one year prior to filing suit are perempted.

## II. The Motion to Compel

The plaintiff sought to compel responses to requests for admissions regarding unrelated partnership ventures of several defendants. The magistrate judge denied the plaintiff's motion because the requests were irrelevant, excessive and burdensome. The magistrate judge also barred the plaintiff from submitting additional requests for admissions without leave of court. Upon review, this Court concludes that the magistrate judge's rulings are not contrary to law. The plaintiff has not demonstrated that the requests for admissions are relevant to the pending litigation or that the magistrate judge abused his discretion by preventing the plaintiff from submitting additional requests without leave. The magistrate judge may, within his discretion, limit discovery to prevent it from becoming excessive or burdensome; thus, the order is not contrary to law. *See* Fed. R. Civ. Pro. 26(b)(2).

## III. CONCLUSION

The defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. The plaintiffs' fraudulent misrepresentation claims are time barred and are DISMISSED. The unfair trade practices claims brought by the individual plaintiff-partners are DISMISSED for lack standing because they are not consumers or competitors within the meaning of La. R.S. 51:1401 *et seq.* The motion to dismiss HMC's LUTPA claims based on lack of standing is DENIED. The LUTPA claims which arose within one year of the filing of suit are not time barred. The LUTPA claims which arose more than one year prior to filing suit are DISMISSED

as time barred. The defendants' motion for a new trial on the appointment of a liquidator to represent HMC is DENIED. The magistrate judge's order denying the plaintiffs' motion to compel is AFFIRMED.